# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY BOWERS, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 16-cv-11300 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| JEFF HUTCHINSON, Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Jeffrey Bowers' *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1]. Petitioner argues that his direct appeal counsel was ineffective for failing to argue that his trial counsel was ineffective for not bringing a post-trial motion arguing that the state trial court coerced the jury by announcing that the jury would be sequestered overnight. For the reasons set forth below, the Court denies Petitioner's habeas corpus petition [1] and declines to issue a certificate of appealability. Petitioner's motion for extension of time [13] is denied as moot.

## I. Background

### A. Criminal Trial

In May 2008, following a jury trial in Illinois state court, Petitioner was found guilty of two counts of first-degree murder for personally discharging a firearm, two counts of attempted first-degree murder, and two counts of aggravated battery with a firearm. His conviction was based on an incident in which he and two accomplices fired an AK-47 into a crowd, fatally wounding two people and seriously injuring two others. Petitioner was sentenced to life in prison

without parole.

At trial, the jury began deliberating around 1:00 p.m. At approximately 4:15 p.m., the jury sent a note to the state trial court asking if it could have the transcript of a witness's testimony; the requested testimony was subsequently provided. At approximately 4:35 p.m., the jury sent a note asking what it meant when the court said that the identification marks were stricken from evidence that the jury received. The parties agreed on a response, and the court also asked the jurors if they wanted to see the firearms evidence, which the jury declined.

Around 7 p.m., the court called the parties into the courtroom and stated:

> Let the record reflect it's approximately 7:00 o'clock. Jurors have been deliberating about 6 and a half hours, and I don't think they have had dinner; so I have instructed the sheriff to order them to a hotel and we're going to sequester them over the evening, and we will have everybody back here at 10:00 o'clock.

*People v. Bowers*, 2016 WL 4761810, at *1 (Ill. App. Ct. Sept. 12, 2016). Defense counsel objected to the sequestration, arguing that since it was Mother's Day weekend, sequestration may influence the juror's desire to quickly finish deliberating. Defense counsel argued that the case should be "held over until Monday." The state trial court noted the objection for the record but ordered that the jury be sequestered overnight and return to court the following morning. Approximately ten minutes later, the state trial court announced that the jurors had reached a verdict. The court also stated that the jurors had signed one wrong verdict form. Defense counsel argued that the jurors were hastened to come up with a verdict to avoid sequestration. The state trial court rejected this argument, stating that there was "absolutely no evidence of that." *Id.* at *1–*2. The jury found Petitioner guilty of two counts of first-degree murder, two counts of attempted first-degree murder, and two counts of aggravated battery with a firearm.

**B.     Direct Appeal**

Petitioner appealed his conviction, arguing, *inter alia*, that the trial court coerced the jury

by announcing that the jury would be sequestered over a holiday weekend. *People v. Bowers*, 2011 WL 9557996, at *11 (Ill. App. Ct. Jan. 25, 2011). The Illinois Appellate Court concluded that this argument had been forfeited because although trial counsel objected to the sequestration order at trial, he did not raise the issue in a post-trial motion and thus did not preserve the issue for review. *Id.* at *12. The Illinois Appellate Court further concluded that since direct appeal counsel made no argument for plain error review, plain error review was also forfeited. *Id.* Accordingly, the Illinois Appellate Court affirmed Petitioner's convictions. The Illinois Supreme Court denied leave to appeal. *People v. Bowers*, 949 N.E.2d 1099 (Ill. 2011) (Table).

### C. State Court Collateral Proceedings

In March 2012, Petitioner filed in state court a *pro se* post-conviction petition arguing that his direct appeal counsel was ineffective "for failing to brief and argue trial counsel's ineffectiveness for not raising in his post-trial motion that the verdict was hastened by sequester" and "for failing to argue for plain error review of an unpreserved issue." *People v. Bowers*, 2016 WL 4761810, at *3–*4 (Ill. App. Ct. Sept. 12, 2016). The court appointed counsel. However, post-conviction counsel later filed a motion to withdraw, stating that after consulting with Petitioner and examining the record, he found no reasonably arguable post-conviction issues. The court granted post-conviction counsel leave to withdraw. Subsequently, the State filed a motion to dismiss Petitioner's state court post-conviction petition arguing that direct appeal counsel was not ineffective for failing to argue for plain error review, Petitioner had not shown that the judge's statement in any way changed or coerced the verdicts, and the length of the deliberations—about six and a half hours—did not indicate that the jury was deadlocked or otherwise unable to unanimously agree. *Id.* at *6. After a hearing on the State's motion to dismiss, the state trial court dismissed the petition, stating that Petitioner had not made a

3

substantial showing of a violation of his constitutional rights. The court explained that the statement about sequestration informed the jury that it did not need to reach a decision that night. Further, the court noted that there was no evidence in the record or from Petitioner that the court's sequestration announcement actually interfered with the jury's deliberations or that the jury was deadlocked at the time of the announcement. Finally, the court held that the sequestration issue could not have survived plain error review where there was no clear and obvious error. *Id.*

Petitioner appealed, arguing that he made a substantial showing of a constitutional claim that his trial counsel and direct appeal counsel provided ineffective assistance by failing to preserve the coerced verdict issue. The Illinois Appellate Court rejected this argument on the merits, concluding that based on the totality of the circumstances, the trial court's comments about sequestration were "entirely proper" and "not coercive." *Id.*, at *10. Illinois Supreme Court denied leave to appeal. *People v. Bowers*, 65 N.E.3d 843 (Ill. 2016) (Table).

In Petitioner's current *pro se* petition [1] for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, he again argues that his direct appeal counsel was ineffective for failing to argue that the unpreserved coerced verdict issue should be reviewed for plain error. [1, at 9.]

## II. Legal Standard

### A. Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, habeas relief cannot be granted unless the state court's decision was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); see also *Williams v. Taylor*, 529 U.S. 362, 402–03 (2000); *Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013). The Seventh Circuit has stressed that habeas relief is "an extraordinary

4

remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Habeas relief under § 2254 is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.2 (1979) (Stevens, J., concurring in judgment)). To obtain habeas relief in federal court, "a state petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Further, the state court's factual findings are presumed correct, and the Petitioner bears the burden of rebutting the state court's factual findings by clear and convincing evidence. § 2254(e)(1); *Toliver v. McCaughtry*, 539 F.3d 766, 772 (7th Cir. 2008).

### B. Ineffective Assistance of Counsel Standard

In order to prevail on an ineffective assistance of counsel claim, Petitioner must show that his counsel's performance was deficient and that he was prejudiced by the deficiencies in counsel's performances. *Strickland v. Washington*, 466 U.S. 688, 687 (1984). Both components of the test must be satisfied or the claim will be denied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

Under the first prong of the *Strickland* test, Petitioner must establish that "counsel's representation fell below an objective standard of reasonableness" when measured against "prevailing professional norms." *Id.* at 688; see also *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016). In evaluating counsel's performance, a court must consider "all of the circumstances of [the] case" in determining whether counsel's acts or omissions "were made

5

outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000) (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). However, review of counsel's performance is "highly deferential," and a court's analysis must begin with a "strong presumption" that the defendant's attorney provided adequate representation to his client. *United States v. Meyer*, 234 F.3d 319, 324–25 (7th Cir. 2000). Petitioner must show that his counsel made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

If a court finds an attorney's representation to be unconstitutionally deficient, it must then proceed to the second prong of the *Strickland* test. Under the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690) (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s

prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Harrington*, 562 U.S. at 111–12 (citations omitted).

Finally, on habeas review, a petitioner must establish that the state court's application of *Strickland* was "both incorrect and unreasonable—that is, 'lying well outside the boundaries of permissible differences of opinion.'" *Toliver*, 539 F.3d at 774 (quoting *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)). The Court must apply "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)); see also *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." (citation and internal quotation marks omitted)).

## III. Analysis

As an initial matter, the relevant decision for purposes of our analysis is the decision of the last state court to rule on the merits of Petitioner's claim—in this case, the September 12, 2016 decision of the Illinois Appellate Court affirming the state trial court's denial of post-conviction relief. See *Stern v. Meisner*, 812 F.3d 606, 609 (7th Cir. 2016). The Illinois Appellate Court correctly identified *Strickland* as the controlling standard. *People v. Bowers*, 2016 WL 4761810, at *10 (Ill. App. Ct. Sept. 12, 2016) ("To establish that appellate counsel was ineffective, a defendant must satisfy the standard articulated in *Strickland v. Washington*, 466 U.S. 668, 685–87 (1984)). The analysis of the Illinois Appellate Court focused on the prejudice prong of *Strickland*. *Bowers*, 2016 WL 4761810, at *10. ("[W]e may dispose of an ineffective assistance claim based on a lack of prejudice alone.").

First, the Illinois Appellate Court noted that "[u]nless the underlying issue is meritorious, a defendant will not be said to have suffered prejudice from appellate counsel's failure to raise an issue on appeal." *Bowers*, 2016 WL 4768610, at *10. The court then analyzed whether the trial court had erred in commenting to the jury about sequestration. The court explained that despite the verdict being returned approximately 10 minutes after the sequestration order, the trial court's comments about sequestration were "simple, neutral, and not coercive" when considering the totality of the circumstances. *Id.* The appellate court reasoned that there was no evidence in the record suggesting that the trial court attempted to rush the deliberations, and no mention was made to the jurors that it was Mother's Day weekend. *Id.* The court further noted that after a long period of deliberation—here, more than six hours—being advised of potential sequestration can actually remove pressure to reach an immediate decision. *Id.* Finally, the court rejected Petitioner's argument that coercion is evidenced by the one incorrectly-signed verdict form, concluding that the argument "amounts to speculation, particularly in light of the court's neutral statement about sequestration." *Id.*

The Illinois Appellate Court therefore concluded that the trial court's comments about sequestration were proper, the verdict was not coerced, and defendant was not prejudiced by (1) his trial counsel's failure to raise the issue in a post-trial motion or (2) his appellate counsel's failure to raise plain error or trial counsel's ineffectiveness. *Bowers*, 2016 WL 4768610, at *10. Since Petitioner had not met the prejudice prong of the *Strickland* test, he was not entitled to post-conviction relief. *Id.*

This Court concludes that the Illinois Appellate Court did not unreasonably apply *Strickland*. As an initial matter, the Illinois Appellate Court's decision to focus on the prejudice prong of *Strickland* was not problematic. "A court can resolve an ineffective assistance claim by

8

deciding either Strickland prong against the defendant, and the court need not consider performance before considering prejudice." *Abreu v. United States*, 925 F. Supp. 1404, 1410 (N.D. Ind. 1996) (citing *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993)). Turning to the merits of the Illinois Appellate Court's decision, the court's determination that the state trial court's comments about sequestration were proper (and thus Petitioner suffered no prejudice) was not contrary to, or an unreasonable application, of *Strickland*.

This court looks to the totality of the circumstances to determine whether the state trial court's comments about sequestration were coercive. *Kelley v. Farley*, 905 F. Supp. 571, 576 (N.D. Ind. 1995), aff'd 96 F.3d 1450 (7th Cir. 1996). Here, the jury deliberated for more than six hours before returning a guilty verdict and appears to have thoroughly considered the evidence. After about three hours of deliberating, the jury sent a note to the court asking if it could have the transcript of a witness's testimony, which was subsequently provided. About twenty minutes later, the jury sent a note asking what it meant when the court said that the identification marks were stricken from the evidence that the jury received. The parties agreed on a response, and the court also asked the jurors if they wanted to see the firearms evidence, which the jury declined. These two notes from the jury reasonably show that the jury considered the evidence and do not indicate that the jury was deadlocked before the court's sequestration announcement. See *People v. McCoy*, 939 N.E.2d 950, 957 (Ill. App. Ct. 2010) (holding that the court's sequestration announcement did not coerce the verdict, and noting that the jurors "appeared to thoroughly consider the evidence and the charges against defendant" where the jury had sent two notes to the court, one asking for a legal definition and the other for transcripts of the testimony of three witnesses). Thus, when placed in context, the state trial court's comments about sequestration were not coercive.

9

In considering the totality of the circumstances, the Court also finds persuasive an examination of what the state trial court did *not* say to the jury. For example, Petitioner does not allege that the court inquired into the numerical division of the jury, admonished the jury that it must reach a verdict, suggested that any jurors should reconsider their positions, or made any reference to the resources expended in the trial. Instead, the court simply instructed the sheriff to inform the jurors that as the hour was growing late, they would be provided accommodations for the night so that they could continue deliberations the next day. Although "[i]nquiries into the numerical division of a jury, statements to a deliberating jury that they must reach a verdict, allusions to the undesirability of a retrial, and setting a time limit upon further deliberations have been held to be coercive," *United States v. Sielaff*, 552 F.2d 588, 590 (7th Cir. 1977), no such comments were made here. See *Kelley*, 905 F. Supp. at 574 (noting that what the state trial court judge did *not* say was persuasive in determining whether judge's comments about sequestration were coercive). The Court therefore concludes that the Illinois Appellate Court reasonably determined that the state trial court's comments were "simple, neutral, and not coercive."

Moreover, the Illinois Appellate Court reasonably emphasized the fact that the jury had not recently received new information shortly before it returned the guilty verdict. The court distinguished *People v. Friedman*, 494 N.E.2d 760, 765 (Ill. App. Ct. 1986), in which the Appellate Court concluded that the trial court's comments likely hastened the verdict. In *Friedman*, the trial court answered the jury's question by defining a legal concept and then told the jury that it would be sequestered overnight in about 45 minutes, and the jury returned guilty verdicts approximately five minutes later. 494 N.E.2d 760, 765. As the Appellate Court explained, the jury in *Friedman* could not have given due consideration to the newly-defined legal concept in five minute. In contrast, however, the jury in the case at bar had not recently received

new information before returning the guilty verdict. *Bowers*, 2016 WL 4761810, at *11.

In sum, the Illinois Appellate Court's determination that the state trial court's comments about sequestration were proper (and thus Petitioner suffered no prejudice) was not contrary to, or an unreasonable application, of *Strickland*. See *Gail v. Dingle*, 2010 WL 681302, at *13 (D. Minn. Feb. 23, 2010) (denying habeas relief and rejecting Petitioner's argument that the trial court had erred in ordering the jury sequestered over Thanksgiving weekend and explaining that "sequestration of a jury does not, in of itself, deprive a defendant of the right to an impartial jury"); *Kelley*, 905 F. Supp. at 574 (denying habeas relief where after jury deliberated for nearly 10 hours, state court judge raised the possibility of going to a hotel within an hour if no verdict was reached, and jury returned a guilty verdict approximately one hour later, and explaining that since there was no error in the judge's comments, counsel was not ineffective for failing to object to them).

Finally, in addition to being a reasonable application of *Strickland*, the Illinois Appellate Court's decision was not contrary to, or an unreasonable application of any other clearly established Supreme Court precedent. "[T]he Supreme Court has never held that notifying the jury of the possibility of sequestration violates the Constitution, nor has it established a governing rule for such situations." *McCoy v. Korte*, 2016 WL 4945072, at *6 (N.D. Ill. Sept. 16, 2016) (emphasis omitted). This is fatal to Petitioner's habeas claim, as "there can be no Supreme Court precedent to be contradicted or unreasonably applied, and therefore no habeas relief, when there is no Supreme Court precedent on point." *Id.* (quoting *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008)). To be sure, the "lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can apply such law." *Gilbert v. McCulloch*, 776 F.3d 487, 481–91 (7th Cir. 2015). However, "a federal habeas court may overturn a state court's application of federal

11

law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents." *McCoy v. Korte*, 2016 WL 4945072, at *6 (quoting *Nevada v. Jackson*, 113 S. Ct. 1990, 1992 (2013)).

Petitioner's claim would fail even if this Court were to more broadly consider the Supreme Court's precedent on *Allen* charges—that is, charges that specifically urge the minority jurors to give weight to the majority's views. *Allen v. United States*, 164 U.S. 492, 501–502 (1896). As Justice Alito noted in his dissent from the denial of certiorari in a habeas case, the Supreme Court's precedents on *Allen* charges is undeveloped:

> The clearly established law relevant to this case is sparse. Just one of this Court's decisions, *Lowenfield v. Phelps*, 484 U.S. 231, 108 S. Ct. 546, 98 L.Ed.2d 568 (1988), has addressed the constitutional rule against coercive jury instructions. And *Lowenfield* held only that, on the totality of the circumstances present there, no unconstitutional coercion resulted. *Id.*, at 241, 108 S. Ct. 546. * * * As a result, the clearly established law in this area provides very little specific guidance. About all that can be said is that coercive instructions are unconstitutional, coerciveness must be judged on the totality of the circumstances, and the facts of *Lowenfield* (polling a deadlocked jury and reading a slightly modified Allen charge) were not unconstitutionally coercive. See 484 U.S., at 237–241, 108 S. Ct. 546.

*Wong v. Smith*, 562 U.S. 1021, 131 (2010) (Alito, J., dissenting). Given this backdrop, the Court cannot conclude that the Illinois Appellate Court's decision was contrary to or an unreasonable application of clearly established Supreme Court precedent. See *McCoy v. Korte*, 2016 WL 4945072, at *6.

Nor was the Illinois Appellate Court's fact-finding unreasonable under § 2254(d)(2). See *id.*, at *7. "A state court's factual finding is unreasonable only if it ignores the clear and convincing weight of the evidence." *Jean-Paul v. Douma*, 809 F.3d 354, 360 (7th Cir. 2015). Here, the Illinois Appellate Court's opinion produces verbatim the exchange between the state trial court and the parties discussing sequestration, which matches the transcript included with Petitioner's reply brief. See *Bowers*, 2016 WL 4761810, at *1; [16, at 14.] Although the

sheriff's exact words to the jury relaying the court's instructions are not in the record, Petitioner does not allege that the sheriff misconstrued the court's sequestration instructions in any way. Thus, the facts are not in dispute.

In sum, the Court concludes that the Illinois Appellate Court's determination that Petitioner's direct appeal counsel was not ineffective was reasonable and not contrary to or an unreasonable application of *Strickland* or any other clearly established Supreme Court precedent, and habeas relief must therefore be denied.

### IV. Certificate of Appealability

Per Rule 11(a) of the Rules Governing § 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition. Instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336. Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2254 claims debatable or wrong. *Id.; Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his claim. Thus, the Court declines to issue a certificate of appealability.

### V. Conclusion

For these reasons, the Court denies Petitioner's habeas corpus petition [1]. The Court

declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter judgment in favor of Respondent. Petitioner's motion for extension of time [13] is denied as moot.

Dated: June 14, 2017

_____
Robert M. Dow, Jr.
United States District Judge